# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **MITCHELL EADS** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Docket No. 1:18-cv-00042** |
| | ) | **Judge Campbell/Frensley** |
| **STATE OF TENNESSEE, et al.** | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

This matter is before the Court based upon a Motion to Dismiss filed by Defendants Regina Hensley, Michael Barnett and Rebecca Mink. Docket No. 159. Defendants Hensley, Barnett and Mink have filed a supporting memorandum of law. Docket No. 160. The pro se Plaintiff has filed "Plaintiff's Answer in Opposition to Defendants' Rule 12 Motion to Dismiss" (Docket No. 170) and "Plaintiff's Memorandum of Law in Support of Answer in Opposition to Defendants' Motion to Dismiss" (Docket No. 171). Defendants Hensley, Barnett and Mink have filed a Reply to the Plaintiff's response. Docket No. 172.

Also pending is a Motion to Dismiss filed by Defendants Tony Parker and Kenneth Williams. Docket No. 168. Defendants Parker and Williams have filed a supporting memorandum of law. Docket No. 169. Plaintiff has filed an "Answer in Opposition to Defendants' Tony Parker and Kenneth Williams' Motion to Dismiss" (Docket No. 174) and "Memorandum of Law in Support of Plaintiff's Answer in Opposition to Defendants' Motion to Dismiss this Action" (Docket No. 175).

For the reasons set forth herein the undersigned recommends that Defendants Hensley, Barnett, and Mink's Motion to Dismiss (Docket No. 159) be **GRANTED**. The undersigned further

recommends that Defendants Parker and Williams' Motion to Dismiss (Docket No. 68) be **GRANTED.**

## II. FACTS

Plaintiff alleges that on January 6, 2018, while incarcerated at the Northeast Correctional Complex ("NECX") in Mountain City, Tennessee, he was lured into another inmate's cell where he was attacked from behind and struck across the face with a handheld, homemade weapon. Docket No. 1, pp. 6-7. Plaintiff alleges five (5) inmates all armed with weapons, were involved in the attack on him and his cell mate *Id.* p. 7. That night the Plaintiff was taken to the NECX Clinic for treatment of his facial injuries. The Plaintiff was taken for evaluation after being "observed with a swollen face during count time" following what Plaintiff described as a "minor scuffle." Docket No. 124-5. Plaintiff was seen by a nurse, Defendant Hensley, who noted a sclera hemorrhage in his left eye. Docket No. 124, p. 3; 124-5. The report reflects the following treatment by Hensley: "Ice pack. Denies need for IBU 'I'm good.' F/U S/C PRN if Sx worsen, released with security." Docket No. 124-3.

On January 7, 2018 at 7:35 p.m. Plaintiff was seen at the clinic by Defendants Mink and Barnett after being attacked again by an inmate. Docket No. 124, p. 3. The Plaintiff was observed with "nose bleeding profusely, bottom lip split [with] bleeding L eye black from 1/6 altercation refuses v/s." Docket No. 124-8. The following treatment plan was documented: "encourage to hold pressure @ bridge of nose [with] head forward, ice pack given, released to security." *Id.*

Plaintiff sought medical attention on January 8, 2018, on an emergency basis but was advised to sign up for sick call for January 9, 2018. Docket No. 124, p. 4. On January 9, 2018, Plaintiff was taken back to the clinic and was seen by the NECX doctor. Docket No. 1, p. 10. On that occasion, Plaintiff advised the medical staff that his "injuries are worse than he thought."

Docket No. 124-11. Plaintiff alleges that he was seen by the dentist who indicated that he was in immediate need of oral surgery and he should be transported immediately for a CT scan. Docket No. 1, p. 11. A CT scan was performed around 1:00 p.m. on January 9, 2018. *Id.* It was determined that Plaintiff had "significant bilateral facial fractures." Docket No. 124-14. Plaintiff was provided Ensure drinks and Ibuprofen and advised that surgery was necessary. Docket No. 1, p. 11.

On January 10, 2018, Plaintiff was transferred from NECX to Turney Center Industrial Complex ("TCIX"). *Id.* at pp. 12-13. That afternoon Plaintiff was seen at the TCIX clinic and made a second request for "immediate" oral surgery at that time. Plaintiff was ordered to be transferred on January 12, 2018 temporarily to Lois DeBerry Special Needs Facility ("DSNF"). Docket No. 124-16. However, Plaintiff was not transferred. Docket No. 124, p. 6. On January 25, 2018, Plaintiff was called to the clinic to sign a consent to travel form. *Id.*

On January 29, 2018, Plaintiff was transferred to DSNF in Nashville, Tennessee and taken to Meharry Medical College the following day. Docket No. 1, p. 15. He received a head x-ray, revealing that the bones in his face had begun to heal. *Id.* Plaintiff was told that he would need to have his mouth wired shut and move his face back into place with rubber bands. *Id.* at p. 16. Plaintiff refused this treatment, advising the surgeon that "surgery, not elastic experimentation" had been ordered for him. *Id.* Plaintiff was returned to TCIX on February 2, 2018. *Id.*

On February 25, 2018, Plaintiff filed a grievance based upon the events surrounding the January 6, 2018 attack. Docket No. 1-1, pp. 50-52; 124-19, pp. 1-3. The grievance confirms that Plaintiff was taken to medical and seen by a nurse but he "said nothing" for fear that his family would be in danger from his attackers. *Id.* Plaintiff acknowledges being taken to medical on two occasions but states that his "face was not diagnosed as broken." *Id.* Despite discussing his trips to the medical infirmary and hospital following the assault, the resolution sought by his grievance

was to "declare incentive units unconstitutional, restore me to my rightfully earned TR-COR Industry Wood Plant job and replace all my lost personal property, [and] provide me with all the investigative reports of this incident and the names of all individuals involved." Docket No. 1-1, p. 50; 124-19, p. 1. On February 27, 2018, Plaintiff was provided with a notification that his grievance was inappropriate for not having been filed within seven calendar days of the occurrence and for addressing multiple issues in a single grievance. Docket No. 124, p. 8.; 124-22. The denial was upheld by the grievance committee and the Assistant Commissioner of Prisons. Docket Nos. 124-21, 124-23, 124-24.

Plaintiff alleges that he was injured by the "substantial delay" from the recommendation from January 9, 2018 that Plaintiff needed immediate surgery until his consultation with the doctor at Meharry on January 30, 2018. Docket No. 1, p. 27. He contends that Defendants Parker and Williams failed to timely transport him following this request and failed to "cause Plaintiff to be removed from TDOC to an outside facility for treatment." Docket No. 124, p. 9.

### III.    LAW AND ANALYSIS

#### A.    Motions to Dismiss Under Rule 12(b)(6).

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F. 3d 712, 716 (6th Cir. 2005).   Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.   *Id.*

The court will construe the complaint in the light most favorable to the nonmoving party, accept its allegations as true, and draw all reasonable inferences in favor of the nonmoving party.

4

*See Directv, Inc. v. Treesh*, 487 F. 3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F. 3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the pleadings contain "a short and plain statement of the claim" that will provide fair notice of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8.

A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 550 U. S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F. 3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has addressed the current appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

**B.      42 U.S.C. § 1983**

**1.   Generally**

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights pursuant to 42

5

U.S.C. § 1983.   Docket No. 10.   Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.   *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978).   The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."   *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

## 2.      Eighth Amendment Violation Claim

The governing standard for an Eighth Amendment violation is "deliberate indifference to an inmate's serious medical need." *North v. Cuyahoga Cty.*, 754 F. App'x 380, 384 (6th Cir. 2018); *see also Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). An inmate can bring suit under § 1983 for an Eighth Amendment violation "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted). Deliberate indifference requires proof that: (1) the inmate had a sufficiently serious medical need; and (2) a municipal actor knew of and disregarded an excessive risk to the inmate's health or safety. *North*, 754 Fed. App'x. at 835; *see*

6

*also Winkler v. Madison Cty.*, 893 F. 3d 877, 890-91 (6th Cir. 2018). Thus, the deliberate indifference standard has both objective and subjective components. *Id.*

The objective component "requires that the inmate have a sufficiently serious medical need such that she is incarcerated under conditions posing a substantial risk of serious harm." *Ford v. Cty. of Grand Traverse*, 535 F. 3d 483, 495 (6th Cir. 2008) (citation and internal quotation marks omitted). A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones v. Muskegon Cty.*, 625 F. 3d 935, 941 (6th. Cir. 2010) (quoting *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008)).

To satisfy the subjective component, a plaintiff must show that officials had a "sufficiently culpable state of mind," namely "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). "Deliberate indifference is greater than negligence but does not require proof that the officials intended to cause harm." *North*, 754 Fed. App'x. at 385; *See also Shadrick v. Hopkins Cty.*, 805 F. 3d 724, 737 (6th Cir. 2015). "Acting or failing to act 'with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* at 737-38 (quoting *Farmer*, 511 U.S. at 836). The plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Phillips v. Roane County*, 534 F. 3d 531, 540 (6th Cir. 2008) (quoting *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001)).

Recognizing that officials "do not readily admit this subjective component," courts may "infer from circumstantial evidence that a prison official had the requisite knowledge." *Id.* (citation omitted). The "very fact that the risk was obvious" may permit a factfinder to conclude that an

7

official was aware of it, *Farmer*, 511 U.S. at 842, and a defendant's denial of knowledge is not dispositive, *see Estate of Carter v. City of Detroit*, 408 F. 3d 305, 313 (6th Cir. 2005). Plaintiffs are not required to prove that the defendant was aware of the exact nature or consequences of the defendant's action or failure to act; demonstrating that the defendant was aware of the plaintiff's condition and knew that "serious risks accompany" it is sufficient. *Dominguez v. Corr. Med. Servs.*, 555 F. 3d 543, 550 (6th Cir. 2009). An official's failure to follow applicable policies and protocols can be persuasive evidence of deliberate indifference in the Eighth Amendment context. *See Phillips*, 534 F. 3d at 541.

The Eighth Amendment guarantees adequate medical treatment, not the medical treatment of the inmate's choice; an inmate's desire for additional or different treatment does not state a cause of action for deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S. at 106-107. Plaintiff's disagreement with the medical treatment he received during his incarceration does not mean the Defendants were deliberately indifferent to Plaintiff's serious medical needs.

### C.     Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law.   42 U.S.C. §1997e(a).   *See also, e.g., White v. McGinnis*, 131 F. 3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F. 3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F. 3d 876, 878 (6th Cir. 1999).   The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a)  **Applicability of Administrative Remedies**.   No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Exhaustion is required even if the prisoner subjectively believes the remedy is not

8

available, even if the state cannot grant the particular relief requested, and even if the prisoner believes the procedure to be ineffectual or futile. *Napier v. Laurel County*, 636 F. 3d 218, 222 (6th Cir. 2011). Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of §1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F. 3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

The PLRA requires "proper exhaustion," meaning that a prisoner's grievance must comply with the procedural rules and requirements of the prison or prison system in order for the exhaustion requirement to be met. *Woodford v. Ngo,* 548 U.S. 81, 93 (2006). Prisoners must complete the administrative review process in accordance with the applicable procedural rules set by the prison grievance process. *Jones v. Bock,* 549 U.S. 199, 218 (2007). Pursuant to the PLRA, a prisoner's unexhausted claims cannot be brought into court. *Id.* at 211.

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether the plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. §1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. §1997e(a) in *Freeman v. Francis*, 196 F. 3d 641 (6th Cir. 1999). In *Freeman*, the plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, the plaintiff argued in part that he was not required to exhaust his

administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of §1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison condition" is not defined in §1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places.
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F. 3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong

10

122 S. Ct. at 988, 992 (citations omitted, emphasis added).

**D.     The Case at Bar**

**1.      Defendants Hensley, Barnett and Mink Motion to Dismiss**

The Defendants argue that the Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, failure to exhaust his administrative remedies, and failure to comply with the Tennessee Healthcare Liability Act. Docket No. 159. Specifically, the Defendants note that the Plaintiff's Complaint and Amended Complaint contain no allegations as to any conduct by these Defendants after the date of January 6, and 7, 2018. *Id.* at p. 6. They contend that the allegations of deliberate indifference ignore the Plaintiff's admission that he misled the medical staff regarding the cause and extent of his injuries and refused medical care the day of attack and the following day. *Id.* at pp. 5-6. This, they contend, rendered it impossible for them to have subjectively perceived facts of substantial risk to the Plaintiff and disregard of that risk. They argue that Plaintiff's claims are an attempt to "second guess the medical judgments" that are insufficient to state a claim under the Eighth Amendment. *Id.* They argue that the Complaint establishes that Hensley rendered care within the scope of her practice and treatment of his injuries on January 6; there is no evidence that Barnett was responsible for treating him at all; and Mink attempted to provide care on January 7, despite Plaintiff's refusal to allow her to even measure his vital signs. *Id.* at p. 6. Defendants argue that Plaintiff's voluntary refusal of treatment precludes his Eighth Amendment claims and, in any event, his complaint should be governed by the Healthcare Liability Act because it sounds in healthcare liability. *Id.* at p. 7. Finally, these Defendants argue that the Plaintiff did not follow the mandatory grievance process required to exhaust his administrative remedies as required under the Prison Litigation Reform Act and therefore the Complaint should be dismissed. *Id.* at pp. 7-8.

11

In response, the Plaintiff argues that his decision not to talk about the incident and his injuries on January 6 and 7, 2018, was made under duress. Docket No. 170. He contends that his refusal to allow his vital signs to be taken did not equate to a refusal for any other evaluation, treatment or surgical procedure and that his refusal would only come in to play after a proper diagnosis has been made. *Id.* at pp. 2-3. He further disputes that he denied treatment and points to an audit of the Department of Corrections conducted in January 2020, by the state comptroller to assert that "the document which was provided to Plaintiff in discovery is now lacking any indicia of reliability as the Tennessee Office of the Comptroller of the Treasury has found that the Defendants have Not followed reporting policies. . . ." *Id.* at pp. 3-4. Plaintiff contends that his Complaint is brought for violations of the United States Constitution and that the Tennessee Healthcare Liability Act is not applicable or controlling. *Id.* at pp. 5-6. Finally, he contends that he did not know the identity of the Defendants at the time that he filed his grievance and that the Court nonetheless allowed his claims to proceed following an initial review. *Id.* at pp. 7-87.

In reply, the Defendants note the Plaintiff's efforts to discredit the exhibits to his pleadings as unreliable based upon the Comptroller's report. Docket No. 172, p. 1. However, they contend that the Plaintiff has not argued that these documents in particular are unreliable and in any event, he uses the same exhibits to his Complaint to substantiate his claims. *Id.* at pp. 1-2. The Defendants point out that the Plaintiff admits that he did not advise medical staff of the full extent of his injuries on January 6-7 and that regardless of the reason he did not do that, he cannot establish the subjective component of a deliberate indifference claim. *Id.* at p. 3. While the Plaintiff argues that his injuries were severe enough to be obvious, his diagnosis was not made until after two doctors, a dentist and a CT scan were employed. *Id.* Defendants argue that the Plaintiff conflates the grievance process with civil litigation and that the Court's findings on initial review are not

12

dispositive. *Id.* at p. 4. The Defendants contend that the Plaintiff has admitted that he did not exhaust his administrative remedies prior to filing of this action and that even if he were not aware of the identity of the individual involved his grievance, did not allege deliberate indifference and he did not file a subsequent grievance against the Defendants. *Id.* at pp. 4-5. They argue that his claim should be dismissed for failure to exhaust administrative remedies.

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The Plaintiff has included the grievance he filed as an attachment to his Complaint. Docket No. 124-19. Therefore, it is appropriate to consider the grievance in relation to the Motion to Dismiss. Any "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F. 3d 737, 745 (6th Cir. 1999), abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The grievance describes in part the attack and the medical treatment the Plaintiff received. *Id.* Importantly, the narrative written by the Plaintiff includes his statement that after he was taken to medical, he "said nothing and we were taken back to our cell at 11:45 p. m." *Id.* Further, the relief requested in the grievance is to "declare incentive units unconstitutional, restore me to my rightfully earned TR-COR Industry Wood Plant job and replace all my lost personal property, provide me with all the investigative reports of this incident and the names of all individuals involved." Docket No. 124-19.

The Plaintiff did not submit any grievances with respect to the care he received as a result of the attack on him. The grievance he filed does not mention or refence Defendants Hensley,

13

Barnett or Mink at all. Most importantly, it does not contend that those Defendants failed to properly diagnosis him or render appropriate medical treatment following the assault. *Id.* Thus, it was effectively not a grievance against these Defendants at all. The fact that it is not a grievance related to this medical treatment is evidenced by the relief he sought. None of the relief sought in the grievance related to his medical care or treatment. Therefore, he effectively did not file a grievance related to that issue. The grievance was denied for being untimely and for containing multiple issues. Docket No. 124-2. Because the Plaintiff did not properly exhaust his administrative remedies, the undersigned recommends that his Complaint be dismissed as it relates to Defendant Hensley, Barnett and Mink.

Even if the Plaintiff had properly exhausted his administrative remedies, his claims against these Defendants nonetheless fail. Based upon the pleadings in this matter, it is clear that the objective component of Plaintiff's Eighth Amendment deliberate indifference claim is satisfied. Clearly, he sustained injury as a result of an assault and those injuries necessitated medical treatment. However, with respect to the subjective aspect of the deliberate indifference claim, the Plaintiff's pleadings do not sustain the claim.

It is undisputed that the Plaintiff did not seek medical treatment on his own for his injuries. It is likewise undisputed that the Plaintiff did not discuss his injuries and made statements to the effect of "I'm good" and refused even the most cursory preliminary diagnostic procedures. Nonetheless, these Defendants were not indifferent to the Plaintiff's need for medical attention and rendered medical attention. The Plaintiff's argument is that these Defendants should have done more notwithstanding him minimizing his injuries and refusal of pain medication and diagnostic procedures. Thus, the Plaintiff does not claim that the Defendants did not render him any care but that the care rendered was not appropriate.

14

Because the pleadings, in the light most favorable to the Plaintiff establish that the Plaintiff received medical attention from these Defendants, his desire for additional or different treatment does not state a cause of action for deliberate indifference or otherwise establish that these Defendants' actions were subjectively unreasonable such to sustain a cause of action. For these reasons, the undersigned recommends that these Defendants' Motion to Dismiss be **GRANTED** and that the Plaintiff's claims against them be dismissed.

### 2.        Defendants Parker and Williams

Defendants Parker and Williams argue that the Court lacks subject matter jurisdiction over the Plaintiff's claims against them for money damages under §1983 as they have sovereign immunity on these claims. Docket No. 168. They further argue that these claims are barred by the one-year statute of limitations. *Id.*

The Plaintiff responds in opposition referring the Court to his pending Motion to Amend Service of Process and arguing that if granted, it could impact the nature of the allegations the Defendants must address. Docket No. 174, p. 2. Plaintiff contends that good cause exists to excuse his failure to comply with the rules of service as Plaintiff did not know the identity of Defendants Parker and Williams until discovery in this case and that they nonetheless had actual notice of the lawsuit. *Id.* at p. 3. The Plaintiff further directs the Court to its initial screening order where the Court acknowledged the Plaintiff's claim that "these allegations are sufficient to go forward with a deliberate indifference claim against the TDOC Medical Director . .  in his or her individual capacity pertaining to the withholding of authorization for surgery despite knowledge of Plaintiff's need for such surgery." *Id.* at p. 6. citing Docket No. 17, pp. 19-20.

### a.        Official Capacity Claims

Plaintiff has sued Defendants Tony Parker and Kenneth Williams in their official capacity.

Docket No. 124. In complaints alleging civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F. 3d 350, 355, n. 4 (6th Cir. 2000), *citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985); *see also Frost v. Hawkins Cnty. Bd. of Educ.*, 851 F. 2d 822, 827 (6th Cir. 1988). As discussed above, the Defendants are employees of the TDOC, a state agency; therefore, Plaintiff's claims against them in their official capacity are claims against the state of Tennessee.

Suits against the states implicate the doctrine of sovereign immunity. "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The United States Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662, 94 S. Ct. 1347 (1974). 42 U. S. C. § 1983 does not abrogate the states' sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 338-45 (1979); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304 (1989); *Whittington v. Milby*, 928 F. 2d 188, 193-94 (6th Cir. 1991). Neither has Tennessee waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a); *Berndt v. Tennessee*, 796 F. 2d 897, 881 (6th Cir. 1986).

In its initial review of the Plaintiff's Complaint, the Court considered the official capacity claims for damages against a host of state prison officials named in the Complaint. Docket No. 17, pp. 28-30. As addressed therein, the Court found that "Plaintiff's official capacity claims for damages against the host of state prison officials named in his complaint are properly dismissed." *Id.* at p. 29. This would necessarily include any claims Plaintiff attempted to assert against

Defendants Parker and Williams in their official capacity. Therefore, Plaintiff's official capacity claims against Defendants Parker and William should be **DISMISSED**.

### b. Individual Capacity Claims

The Plaintiff alleges that Commissioner Parker and Dr, Williams did not timely transport Plaintiff to an outside facility to receive surgery following the doctor's request. *Id.* at p. 9. He contends that he was injured by the delay from the recommendation for surgery on January 9, 2018 until his consultation at Meharry in January 30, 2018. Docket No. 1, p, 27. The Defendants argue that Plaintiff's claims are barred by the statute of limitations. Docket No. 169, p. 7. Plaintiff argues that because his action was commenced under Rule 3 on the date on which a Complaint was filed and the Court, in its initial review, found that there were sufficient allegations to go forward with the deliberate indifference claim against the TDOC Medical Director in his or her individual capacity, Defendants' arguments must fail. Docket No. 175, pp. 5-7.

It is well established law that the statute of limitations for actions under §1983 are those applicable to personal injury actions under the law of the state where the §1983 action arises. In Tennessee, the statute of limitations for personal injury is one year from the date the cause action accrues. The statute of limitations begins to run when a Plaintiff knows or has reason to know of the injury which is the basis of his complaint.

In this situation, it is undisputed that the Plaintiff alleges that he was harmed by the delay from January 9, 2018, the date surgery was requested by medical staff at the prison until he was seen by the doctor at Meharry on January 30, 2018. As a result, Plaintiff was aware of his cause of action no later than January 30, 2018. As a result, the statute of limitations required him to file any claim against these Defendants related to that delay by January 30, 2019. Plaintiff contends that the filing of this action on June 14, 2018, identifying the Tennessee Department of Corrections

17

Medical Director as a defendant satisfies his burden.

### i.    Defendant Parker

Defendant Parker argues that the claims against him are barred by the statute of limitations. Docket No. 169, p. 7. Defendant argues that Plaintiff knew of his cause of action by at least January 30, 2018 and "did not name Commissioner Parker . . . to the case until he filed his Amended Complaint on August 23, 2019." Id. Therefore, Defendant Parker argues that Plaintiff's claims against him are time barred and should be dismissed. Id.

The Plaintiff disputes Defendant Parker's assertion that he was not named in the original Complaint. Docket No. 175, pp. 5-6. On this point, Plaintiff states the following:

> Plaintiff would direct this Court to Document 1, ID at 17, Where Plaintiff alleged "The Failure of Commissioner Tony Parker and Medical Director Kenneth Williams to Cause Plaintiff   to be removed from TDOC to a [sic] outside facility for Treatment", Doc. 1 at 17. Emphasis Original. Docket No. 175, p. 6.

The undersigned has reviewed Plaintiff's original Complaint in great detail and the language quoted by Plaintiff does not appear in the original Complaint. Rather, it appears at paragraph 17 of Plaintiff's Amended Complaint. Docket No. 124, pp. 8-9. Further, this statement is inconsistent with Plaintiff's Answer in Opposition to the Motion to Dismiss where he states "good cause exists under Federal Rule of Civil Procedure 4(m) to excuse Plaintiff's failure to comply with the rules of service as Plaintiff   did not know the identity of Defendants Tony Parker and Kenneth Williams until discovery . . . ." Docket No. 174, p. 3.

The matter is further complicated by the fact that in his original Complaint, Plaintiff identified more than 30 Defendants in the caption of his Complaint but did not include Defendant Parker among those defendants. Docket No. 1, pp. 1-4. However, Plaintiff did identify Parker in his individual and official capacity as the Commissioner of the Tennessee Department of Corrections in the form version of his Complaint. Docket No. 1, p. 6. Nonetheless, Defendant

Parker does not appear to be identified anywhere else in the Plaintiff's original Complaint and no specific allegations are levied against him in either his individual or official capacity in the original Complaint. Thus, while he is identified no claim is asserted against him in the Complaint.

With respect to the individual capacity claims, allegations of a complaint "give the Defendant fair notice of . . . what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U. S. 544, 555 (2007). In other words, a plaintiff must attribute factual allegations to particular defendants. *Id.* Where a person is named as a defendant without an allegation of specific conduct attributed to him, the complaint against him is subject to dismissal even under the liberal construction afforded pro se complaints. *See, Gilmore v. Corrections Corp of America*, 92 F. Appx. 188, 190 (6th Cir. 2004)(dismissing complaint where Plaintiff failed to allege how any named Defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. Appx. 762, 764 (6th Cir. 2002)(dismissing Plaintiff 's claims where the complaint did not allege with any degree of specificity which if any of the named Defendants were personally involved in, or responsible for, each alleged violation of rights).

Here, notwithstanding the confusion around whether Defendant Parker was named in the original complaint, it is clear that there were no allegations specifically made against him. Likewise, it does not appear that he was served until being identified in the Amended Complaint. Docket No. 150.

Because no claims were asserted against Defendant Parker in the original Complaint, he was not on notice of any claims against him at that time. It was not until the Amended Complaint that Plaintiff identified Defendant Parker and alleged a complaint against him. Docket No. 124, pp. 8-9. Because that claim was not asserted until the filing of the Amended Complaint on August 23, 2019, Plaintiff's claims against Defendant Parker are time barred. Thus, Defendant Parker's

19

Motion to Dismiss any individual capacity claim against him should be GRANTED.

### ii. Defendant Williams

Plaintiff's original Complaint identified as a Defendant in this case "Tennessee Department of Corrections Medical Director 'to be named after discovery' in his individual and official capacity." Docket No. 1, p. 3. Defendant Williams was first identified as a Defendant to this case in Plaintiff's Amended Complaint. Docket No. 124, p. 2.

> Where a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may initially file a complaint that names an unknown defendant by using a "John Doe" appellation or similar pseudonym. However, simply identifying an unknown defendant in a complaint by the pseudonym of John Doe is not enough to commence a civil action against that unknown defendant. A civil action cannot be commenced against a fictitious party such as an unknown John Doe. Until the plaintiff files an amended complaint under Fed. R. Civ. P. 15 that identifies and adds or joins a John Doe defendant by his true name, the John Doe allegations in the complaint are mere surplusage.

*Brumlow v. Hamilton County, Tennessee,* 2019 WL 613217 (E. D. Tenn. Feb. 13, 2019) (all internal citations omitted).

While the Plaintiff did not identify Defendant Williams as "John Doe," he did not identify Defendant Williams by his true name until filing the Amended Complaint on August 23, 2019. In fact, it appears from the original Complaint the identity of Dr. Williams was unknown to the Plaintiff at the time of the filing of the Complaint as evidenced by his statement that the Director was "to be named after discovery." Docket No. 1, p. 3. At the time the Plaintiff filed his original Complaint he still had over six months within the original statute of limitations to identify Defendant Williams. Nonetheless, he did not amend his Complaint to identify Defendant Williams by his true name until more than a year after filing his initial complaint and more than six months after the running of the statute of limitations. "Substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution of parties." *Cox v. Treadway*, 75 F. 3d 230, 240 (6th Cir 1996).

"[A] plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Moore v. Tennessee*, 267 F. Appx. 450, 455 (6th Cir. 2008). As such, Plaintiff's claims against Defendant Williams are not saved from the statute of limitations, because "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for the purposes of limitations. *In re Kent Holland Die Casting & Plating, Inc.,* 928 F. 2d 1448, 1450 (6th Cir. 1991) (citation omitted).

Accordingly, because Plaintiff cannot avail himself to the relation back doctrine, his claims against Defendant Williams are timed barred, notwithstanding the timeliness of his original Complaint against the "John Doe."

## IV.    CONCLUSION

For the reasons stated herein the undersigned recommends that the Motion to Dismiss (Docket No. 159) filed by Defendants Hensley, Barnett and Mink be **GRANTED** and that the Motion to Dismiss (Docket No. 168) filed by Defendants Parker and Williams be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**U. S. Magistrate Judge**

21