# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| MITCHELL EADS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:18-cv-00042 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| STATE OF TENNESSEE, et al., | ) MAGISTRATE JUDGE FRENSLEY |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff's objections (Doc. No. 194) to the Report and Recommendation of the Magistrate Judge (R&R) (Doc. No. 186). The R&R considered motions to dismiss filed by Defendants Regina Hensley, Michael Barnett, and Rebecca Mink (the "Nurse Defendants") (Doc. No. 159), and Defendants Tony Parker and Kenneth Williams (Doc. No. 168), and recommended the Court grant the motions to dismiss and dismiss all claims against these Defendants. (Doc. No. 186). Noting that no objections to the R&R had been filed, on March 12, 2021, the Court Adopted the R&R and Granted the motions to dismiss. Several weeks later, on April 8, 2021, Plaintiff filed objections to the R&R and moved the Court to excuse the late filing. (Doc. Nos. 193, 194). The Court Granted Plaintiff's motion to excuse the late filing (Doc. No. 197) and now considers Plaintiff's objections to the R&R.

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.03(b)(3), a district court reviews de novo any portion of a report and recommendation to which a specific objection is made. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). General or conclusory objections are insufficient. *See Zimmerman v. Cason*, 354 F. Appx. 228, 230 (6th Cir. 2009). Thus, "only those specific

objections to the magistrate's report made to the district court will be preserved for appellate review." *Id*. (quoting *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). In conducting the review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). Plaintiff attached a number of documents, including medical records and inmate grievance forms, to the Amended Complaint. (Doc. No. 124-1 through 124-24). The Court has considered these documents.

## II. ANALYSIS

The Magistrate Judge's thorough summary of the factual allegations is based on allegations from the initial complaint (Doc. No. 1), the amended complaint (Doc. No. 124 (which incorporates the initial complaint by reference)), and the documents attached to the amended complaint,

including medical records and inmate grievances (Doc. Nos. 124-1 through 124-24). The Court finds no cause for disagreement with the Magistrate Judge's summary of the factual allegations. For clarity of the record, the Court provides will summarize the factual allegations relevant to the motions to dismiss that are the subject of the Report and Recommendation.

Plaintiff alleges that on January 6, 2018, while incarcerated at the Northeast Correctional Complex ("NCEX") in Mountain City, Tennessee, he was lured into another inmate's cell and attacked. (Doc. No. 1 at 6-7). A few hours later, he was taken by security to the NCEX clinic for treatment after "being observed with a swollen face during count time." (Doc. No. 124-2). He was seen by Nurse Regina Hensley. (Doc. No. 124-3). She observed that he had bruising, his left lower eye was nearly swollen shut, and noted a scleral hemorrhage in his lower eye. (Doc. No. 124-3). The report reflects the following treatment: "ICE PACK. DENIES NEED FOR IBU. 'I'M GOOD.' F/U S/C PRN IF SX WORSEN. RELEASED WITH SECURITY." (*Id*.). Plaintiff states Nurse Hensley performed a cursory assessment that lasted only a few minutes. (Doc. No. 124, ¶ 4).

The following day, Plaintiff returned to the NCEX clinic following a second attack by the same inmates. (Doc. No. 124, ¶ 5). On this occasion he was seen by Defendants Rebecca Mink and Michael Barnett, and a third nurse, Beth Meritt. (*Id*.; Doc. No. 124-8). The report states that Plaintiff reported he had been "sucker punched in the nose by celly." (Doc. No. 124-8). The report reflects that Plaintiff's nose was "bleeding profusely," his "bottom lip [was] split and bleeding," and his eye was black from the altercation the previous day. (*Id*.). He was instructed to hold pressure on his nose, given an ice pack, and released to security. (Doc. No. 124-6). Plaintiff refused additional treatment and signed a "Refusal of Medical Services" form. (Doc. No. 124-9). Plaintiff states the assessment lasted approximately 10 minutes. (Doc. No. 124, ¶ 5).

The next day, January 8, 2018, Plaintiff "begged for medical attention" and was instructed to sign up for "sick call" on January 9. The morning of January 9, 2018, Plaintiff was taken back to the NCEX clinic where he told the medical staff that his "injuries are worse than he thought." (Doc. No. 124, ¶ 8; Doc. No. 124-11). He informed the medical staff that he had increasing pain at level 9 out of 10, a constant trickle of blood in the back of his throat, and that he could not chew or eat anything. (Doc. No. 124-11). The doctor observed, "inmates jaw appears dislocated, cheek is swollen and misshapen, eye is swollen almost shut." (Doc. No. 124-12). Plaintiff received a CT scan that afternoon. Based on the results of the CT scan, the doctor determined that Plaintiff had "significant bilateral facial fractures." (Doc. No. 124-14). Plaintiff claims that a doctor told him that he needed surgery and would be transported "very quickly." (Doc. No. 1 at 11).

The following day, January 10, 2018, Plaintiff was transferred from NCEX to a different facility, Turney Center Industrial Complex ("TCIX"). (Doc. No. 1 at 12-13). Plaintiff alleges that he was seen at the TCIX clinic that day by Doctor Bigham, who sent an email to the TDOC medical director and Centurion Medical Services requesting "immediate oral maxillary surgery." (*Id*. at 13-14). On January 11, 2018, TCIX requested approval for "urgent" "Oral Facial Surgery" for Plaintiff and he was ordered to be transferred from TCIX to the Lois M. DeBarry Special Needs Facility ("DSNF") on January 12, 2018.[1] (Doc. Nos. 124-13; 124-15 124-16). Plaintiff signed a consent to travel form on January 11, 2018. (Doc. Nos. 124-15; Doc. No. 124, ¶ 10), but was not transported. On January 25, 2018, he signed a second consent to travel form, and was transferred to DSNF on January 29, 2018. (Doc. No. 1 at 15; Doc. No. 124, ¶¶ 10-11).

---

[1] The Lois M. DeBerry Special Needs Facility is a facility within the Tennessee Department of Corrections that provides services for offenders with multiple and complex medical problems, including acute care. *See* www.tn.gov/correction/sp/state-prison-list/lois-m-deberry-special-needs-facility.html (last visited Feb. 22, 2022).

On January 30, 2018, Plaintiff was taken to Meharry Medical College. He was told surgery was no longer an option because the x-rays taken that day showed that the bones on his face had begun to heal. (Doc. No. 1 at 15-16). In lieu of surgery, the surgeon recommended wiring Plaintiff's jaw shut and attempting to realign the facial bones with rubber bands. (*Id*.). Plaintiff rejected this treatment. (*Id*.).

On February 25, 2018, following his return to TCIX, Plaintiff filed a lengthy grievance based upon the events surrounding the attacks on January 6 and 7, 2018, at NCEX, and his subsequent treatment. (Doc. No. 124-19). The specific relief requested was to "declare incentive units unconstitutional, restore me to my rightfully earned TR_COR Industry Wood Plant job and replace all my lost personal property, [and] provide me with all the investigative reports of this incident and the names of all individuals involved." (*Id*.). On February 27, 2018, plaintiff was notified that his grievance was "inappropriate" for not having been filed within seven calendar days of the occurrence giving rise to the grievance and for addressing multiple issues in a single grievance. (Doc. No. 124-22).

As relevant to the motions to dismiss, Plaintiff brings claims under 42 U.S.C. § 1983 alleging Nurses Regina Hensley, Michael Barnett, and Rebecca Mink violated his constitutional rights under the Eighth Amendment.[2] (Doc. No. 124 at 8-10). Plaintiff claims the Nurse Defendants were deliberately indifferent to his serious medical needs when they failed to diagnose his "obvious broken facial bones." (Doc. No. 124 at 9). Plaintiff also appears to claim they did not spend enough time with him during his clinic visits and rendered inadequate medical treatment.

---

[2] Nurse Beth Merritt was also named in the Amended Complaint (Doc. No. 124). She has not been served. (*See* Doc. No. 146 (summons returned unexecuted)).

Plaintiff also brings Eighth Amendment claims against Tony Parker, Commissioner of the Tennessee Department of Corrections, and Kenneth Williams, Medical Director of the Tennessee Department of Corrections. (*Id*.).

The Magistrate Judge recommended granting motions to dismiss filed by these Defendants. (Doc. No. 186). As discussed in further detail below, the Magistrate Judge found that there were two independent grounds for dismissing the claims against the Nurse Defendants. First, he concluded that Plaintiff failed to exhaust administrative remedies with regard to these defendants because the grievance did not specifically name any of the Nurse Defendants and did not contend that they failed to diagnose him or render appropriate medical treatment following the assault. (*Id*. at 14). The Magistrate Judge further found that even if Plaintiff had properly exhausted his administrative remedies, his claims against the Nurse Defendants nonetheless fail because it is clear from the pleadings that Plaintiff cannot satisfy the subjective component of the deliberate indifference test. (*Id*.).

With regard to the claims against Tony Parker and Kenneth Williams, the Magistrate Judge found the official capacity claims are barred by the doctrine of sovereign immunity and the individual capacity claims are untimely. (Doc. No. 186 at 16-21).

**A. Plaintiff's Objections to Dismissal of the Claims Against the Nurse Defendants**

Plaintiff objects to the Magistrate Judge's finding that he did not exhaust administrative remedies with regard to his claims against the Nurse Defendants. Plaintiff also objects to the determination that he cannot satisfy the subjective component of the deliberate indifference claim.

Having reviewed the pleadings, the Court agrees with the Magistrate Judge that Plaintiff cannot satisfy the subjective component of the deliberate indifference claim as to the Nurse Defendants and that the claims against the Nurse Defendants should be dismissed.

"Deliberate indifference to an inmate's serious medical need" is a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *North v. Cuyahoga Cty.*, 754 F. App'x 380, 384 (6th Cir. 2018); *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). Deliberate indifference has both objective and subjective components, requiring "proof that an inmate had a sufficiently serious medical need and that a municipal actor knew of and disregarded an excessive risk to the inmate's health or safety." *North*, 754 F. App'x at 385.

The objective component "requires that the inmate have a sufficiently serious medical need such that [he or she] is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citing *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008)). The Magistrate Judge found that the severe injuries to Plaintiff's face "clearly" satisfy the objective component. (Doc. No. 186 at 14). The Court agrees.

The subjective component requires that officials had a "sufficiently culpable state of mind" of "deliberate indifference to inmate health or safety." *Id*. at 385 (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference requires more than negligence, something akin to reckless disregard; but it does not require proof that the officials intended to cause harm. *Id*. Plaintiff must "allege facts which, if true, would show that the [Nurse Defendants] subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded the risk." *Stewart v. Warren Cty. Bd. of Comm'rs*, 821 F. App'x 564 (6th Cir. 2020) (quoting *J.H. v. Williamson Cty.*, 951 F.3d 709, 722-23 (6th Cir. 2020)). "The subjective component is designed 'to prevent the constitutionalization of medical malpractice claims.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). In order to show deliberate indifference, a plaintiff must allege "more than negligence or the misdiagnosis of an ailment." *Id*. (quoting *Comstock v.*

*McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Although medical care that is "so cursory as to amount to no treatment at all," may constitute deliberate indifference, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id*.

The Magistrate Judge concluded that Plaintiff's allegations with regard to the claims against the Nurse Defendants did not satisfy the subjective component because Plaintiff complained only that these Defendants "should have done more notwithstanding him minimizing his injuries and refusal of pain medication and diagnostic procedures." (Doc. No. 186 at 14). Plaintiff objects to this conclusion arguing that "the Complaint is not a dispute over the adequacy of the treatment he received as the Complaint establishes that Plaintiff was 'ordered' surgery multiple time by [three] doctors … which he has not received to the date of this filing." (Doc. No. 194 at 3-4). Plaintiff argues the Magistrate Judge failed to address his argument that security personnel recognized his "obvious" need for medical care, escorted him to the clinic, and made him seek medical treatment. (*Id*. at 4 (citing Doc. No. 1 at 8-9)).

The Court finds Plaintiff's objections on this issue without merit. The allegations state that Plaintiff was treated by Defendant Hensley at the NCEX clinic on January 6, 2018. (Doc. No. 124-3). This is the only time Defendant Hensley was involved with Plaintiff's care. During this visit, which the Court notes was not of his own volition (he was taken to the clinic by security after they noticed his swollen face at roll call), Plaintiff reported that he had been punched in the face, which he described as a "minor scuffle," denied the need for pain medication, and told Nurse Hensley, "I'm good." (Doc. No. 124-5). Plaintiff acknowledged in his grievance that when taken to medical he "said nothing" because he was afraid his attackers would harm his family. (Doc. No. 124-19).

Defendant Hensley gave Plaintiff an ice pack for his face and instructed him to return if his pain worsened. (Doc. No. 124-5). Taken in the light most favorable to the Plaintiff and generously construed in light of his *pro se* status, these allegations do not support an inference that Defendant Hensley deliberately disregarded a substantial risk of harm to Plaintiff.

The following day, Plaintiff was treated by Defendants Barnett and Mink. (Doc. No. 124-9). The only allegations in the Complaint concerning these Defendants concern their treatment of Plaintiff on January 7, 2018. (*See* Doc. No. 1, Doc. No. 124). On that day, Plaintiff was brought to the clinic after being attacked a second time. (Doc. No. 124, ¶ 5). He told the nurses that he had been "sucker punched in the face." (Doc. No. 124-8). The report states that he was bleeding profusely from the nose, his bottom lip was split and bleeding, and he had a black eye from the altercation the previous day. (*Id.*). Plaintiff refused to allow the nurse to take his vital signs and signed a "refusal of medical services" form. (*Id.*; Doc. No. 124-9). He was told to hold pressure on his nose and tilt his head forward, given an ice pack, and released to security. (Doc. No. 124-8). Plaintiff does not allege Defendants Barnett and Mink were involved with his care after this date.

With regard to the medical care provided on January 7, 2018, Plaintiff does not allege that Defendants Barnett and Mink did not render him any care, but that the care rendered was inadequate because they did not diagnose his "obviously broken facial bones." (Doc. No. 124 at 9). As stated above, to state a claim for deliberate indifference, Plaintiff must allege more than misdiagnosis of an injury. *Winkler*, 893 F.3d at 891. Moreover, considering Plaintiff's refusal to allow even his vital signs to be taken, the allegations of inadequate treatment are insufficient to state a claim for deliberate indifference against Defendants Barnett and Mink.

Because the Court finds Plaintiff has not sufficiently alleged constitutional claims against the Nurse Defendants, it need not consider whether he exhausted administrative remedies as to these Defendants. The Court declines to adopt the portion of the Magistrate Judge's Report and Recommendation related to exhaustion of administrative remedies.

**B. Plaintiff's Objections to Dismissal of Claims as Time-Barred**

The Magistrate Judge recommended the individual capacity claims against Tony Parker and Kenneth Williams be dismissed as time barred.[3] (Doc. No. 186 at 20-21). The statute of limitations for actions brought under 42 U.S.C. § 1983 is the statute of limitations applicable to personal injury actions under the law of the state where the action accrue, which, in Tennessee, is one year. *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Thompson v. Hall*, No. 3:11-cv-1232, case no. 1:18-cv-00042, at *3 (M.D. Tenn. Aug. 7, 2012). "[O]rdinarily, the limitations period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Edison*, 510 F.3d at 635.

Defendants Parker and Williams moved to dismiss the claims against them, in part, on grounds that they are barred by the one-year statute of limitations. They contend Plaintiff knew of his cause of action no later than January 30, 2018, the day he was examined at Meharry Medical Center and learned that the surgeon wanted to wire his jaw shut and try to realign his facial bones with rubber bands in lieu of surgery. (Doc. No. 169 at 7). Parker and Williams contend they were not named as defendants until August 23, 2019, when Plaintiff filed an amended complaint, and, consequently, the claims are time barred.

---

[3] The Magistrate Judge also recommended the official capacity claims against Parker and Williams be dismissed as barred by the doctrine of sovereign immunity. (Doc. No. 186 at 16-17 (citing Memorandum Opinion, Doc. No. 17, dismissing official capacity claims against a "host of state prison officials")). Plaintiff did not object to this recommendation.

10

The Magistrate Judge found that the original complaint (Doc. No. 1) did not allege claims against Tony Parker, noting that although Parker was listed as a defendant on the TDOC form version of the complaint (Doc. No. 1 at 6), the original complaint did not contain any allegations specific to him and he is not otherwise identified. (Doc. No. 186 at 19). The Magistrate Judge concluded that Defendant Parker was, therefore, named for the first time in the amended complaint filed on August 23, 2019, outside the status of limitations. (*Id.*).

With regard to the claims against Kenneth Williams, the Magistrate Judge recognized that Plaintiff alleged claims against the "Tennessee Department of Corrections Medical Director 'to be named after discovery.'" He reasoned that "[w]hile the Plaintiff did not identity Defendant Williams a 'John Doe,' he did not identify Defendant Williams by his true name until filing the Amended Complaint on August 23, 2019." (Doc. No. 186 at 20). The Magistrate Judge concluded that the claims against Williams were also time-barred because "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." (Doc. No. 186 at 20 (quoting *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)).

Plaintiff objects to the dismissal of Kenneth Williams on statute of limitations grounds.[4] (Doc. No. 194 at 4-7). Plaintiff argues that the initial complaint, (Doc. No. 1 at 3), did not name a "John Doe," it named the Medical Director of the Tennessee Department of Corrections, stating that the given name of the medical director would be added "after discovery." He points out that there is no dispute that Kenneth Williams is the Medical Director of the Tennessee Department of Corrections. (Doc. No. 194). He further argues that the Magistrate Judge incorrectly concluded that he had a meaningful opportunity to learn the name of the TDOC Medical Director between the time he filed the initial complaint and the end of the limitations period, because he "was placed

---

[4] Plaintiff did not specifically object to the dismissal of Defendant Tony Parker.

in retaliatory punitive segregation March 6th [2018]" and "was denied access to legal library services, [and] notary services …" and "did not receive discovery from the uncooperative defendants until April 10th, 2019." (Doc. No. 194 at 5). Plaintiff argues that but for Defendants' conduct in restricting his access to legal services and failing to respond to discovery requests, he would have added the name of the TDOC Medical Director within the limitations period.

The Court respectfully disagrees with the Magistrate Judge's conclusion that Williams should be dismissed on statute-of-limitations grounds. Although Plaintiff has not used the words "equitable tolling," his objections clearly implicate equitable considerations. "The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *See Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). The Court considers, "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *3799 Mill Run Ptnrs, LLC v. City of Hilliard, Ohio*, 839 F. App'x 948, 951 (6th Cir. 2020) (citing *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1998)).

Plaintiff has raised a number of reasons he did not or could not seek to amend the complaint to specify that Kenneth Williams is the Defendant named as "Tennessee Department of Corrections Medical Director." He claims he was unable to access legal library services while he was in segregation. In addition, Plaintiff argues that although he made "a number of discovery requests" to Defendants, he did not receive a response to those requests until April 10, 2019.

The Court further notes that although Plaintiff did not file an amended complaint identifying Kenneth Williams as the TDOC Medical Director until August 23, 2019, he sought

12

leave to name Dr. Williams prior to that date. On April 26, 2019, Plaintiff filed a motion seeking to name and serve previously unidentified parties, including Dr. Williams, who he identified from discovery materials from the Defendants. (*See* Doc. No. 97 (executed April 22, 2019)). The Magistrate Judge initially denied leave to amend the complaint because the scheduling order set an April 4, 2019, deadline for amending the complaint, and Plaintiff's motion was filed after that deadline. (Doc. No. 105). Plaintiff asked the Magistrate Judge to reconsider, claiming, among other things, that he relied on the Court's September 7, 2018 Memorandum Opinion as giving him a right to name previously unnamed defendants after discovery. (*See* Doc. No. 109 (citing Memorandum Opinion, Doc. No. 17 at 18, n.2). On July 30, 2019, the Magistrate Judge issued an order granting Plaintiff's motion to amend and ordering him to file an amended complaint by August 23, 2019. (Doc. No. 116). Plaintiff timely filed an amended complaint, which identified Kenneth Williams as the TDOC Medical Director. (Doc. No. 124).

The parties have not briefed this issue, and the Court makes no determination, at this juncture, whether the statute of limitations should be tolled in this case. However, the Court finds Plaintiff has stated sufficient facts to raise the question of whether equitable considerations merit tolling the statute of limitations. Having considered Plaintiff's objections and the record of this case, the Court concludes the claims against Dr. Williams should not be dismissed on statute of limitation grounds at this time.

## C. Plaintiff's General Objections

In addition to the specific objections to the Magistrate Judge's Report and Recommendation, Plaintiff raises a number of general objections.

First, Plaintiff objects that the Magistrate Judge did not address Plaintiff's request that the Court defer ruling on Defendants' motions to dismiss until the time of trial. This objection is

without merit. The Magistrate Judge issued a recommendation on the motions to dismiss, effectively rejecting Plaintiff's request that the Court defer ruling on the motions until the time of trial. Moreover, the Court is under no obligation to specifically address every argument presented by the parties.

In addition, Plaintiff objects to the Report and Recommendation on grounds that he is without a copy of the initial complaint and was unable to address Defendants' alleged mischaracterization of the language of the initial complaint. (Doc. No. 194 at 2). This objection is not tied to any specific legal conclusions or recommendations in the Report and Recommendation, but to the appropriateness of the Court's consideration of Defendants' motions at all. A review of the record shows that Plaintiff has been able to litigate this case, including responding to the motions to dismiss, despite having to do so within the confines of his place of incarceration, and potentially without access to copies of all of the filings in this case. Moreover, a review of Plaintiff's opposition to Defendants' motion to dismiss (Doc. No. 170) shows that Plaintiff cited allegations from the original complaint (Doc. No. 1) and the amended complaint (Doc. No. 124). Plaintiff's lack of access to legal documents is not grounds for rejecting the Report and Recommendation.

Finally, Plaintiff reraises his long-standing complaint that he has not have adequate access to a law library during the pendency of this case and that the legal resources to which he does have access are inadequate. (Doc. No. 194 at 7-9 (listing a number of resources, including Westlaw access, not available at the prison library)). He states that he had no access to Lexis between April 2019 and April 2020, and, at the time of filing the facility where he was housed was on its sixth COVID-19 quarantine in four months. (*Id*. at 8-9). Plaintiff claims that, as a result of these access issues, he has been unable to research the law to respond to Defendants' motions. He states that

14

he has separately filed a motion for access to electronic legal research databases, specifically Westlaw. (Motion filed at Doc. No. 195).

The Court acknowledges the difficulties Plaintiff faces litigating this action while incarcerated. As indicated by the decision in this Order, Plaintiff has articulately and persuasively responded to the motions to dismiss and objected to the Report and Recommendation. The Court does not find lack of access to legal resources affected the rulings on these motions.

### III. CONCLUSION

For the reasons stated above, the Court's March 12, 2021 Order adopting the Report and Recommendation (Doc. No. 191) is **VACATED**. The Motion to Dismiss (Doc. No. 159) filed by Defendants Hensley, Barnett, and Minks is **GRANTED**.

The Motion to Dismiss (Doc. No. 68) filed by Defendants Parker and Williams is **GRANTED** in part, and **DENIED** in part. The official capacity claims against Defendants Parker and Williams are dismissed. The individual capacity claims against Tony Parker are also dismissed. The individual capacity claims against Kenneth Williams will proceed.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE